UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



SEALED

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| V. | § | CRIMINAL NO. H-04- 196 |
| | § | |
| EMMA GUYTON | § | |
| AMINATA SMITH aka ATA | § | |

United States Courts
Southern District of Texas
FILED

MAY 2 0 2004

Michael N. Milby, Clerk of Court

**INDICTMENT**

THE GRAND JURY CHARGES THAT:

**Introduction**

At all times relevant and material to this indictment:

1.    An alien who is the spouse of a United States citizen can obtain an immigrant visa and enter the United States and obtain resident alien status without regard to the numerical limitations on immigration defined in Title 8 U.S.C. § 1151.

2.    To obtain an immigrant visa for his/her alien spouse, a United States citizen files with the Department of Justice Immigration and Naturalization Service (INS), or its successor the Department of Homeland Security (DHS), an application called a Petition for Alien Relative (INS Form I-130).  This application is commonly called an immigrant visa petition.

3.    An alien who is inside the United States and immediately able to immigrate into the United States may obtain resident alien status without leaving the United States through a process called adjustment of status, pursuant to Title 8 U.S.C. § 1255.

\

4.    To adjust status pursuant to Title 8 U.S.C. § 1255, an alien files with the INS/DHS an Application to Register Permanent Residence or Adjust Status (INS Form I-485). This application is commonly called an adjustment of status application.

5.    When the alien spouse is in the United States, it is the usual practice to file the INS Form I-130 and INS Form I-485 together. When this is done, both applications are adjudicated by the INS/DHS simultaneously.

6.    Pursuant to Title 8 U.S.C. § 1357(b), INS/DHS District Adjudication Officers have the authority to administer an oath to any person with relevant information and take and consider evidence concerning the privilege of any person to enter or reside in the United States.

7.    When adjudicating the combined I-130 and I-485 applications, the couple must appear for an interview before an Adjudication Officer to determine the validity of the marriage. The couple is placed under oath and asked questions concerning their marriage.

8.    Effective March 1, 2003, the INS ceased to exist. INS' duties and responsibilities were taken over by the DHS. Under the DHS, there are three sub-agencies having immigration functions: the Customs and Border Protection (CBP); Citizenship and Immigration Services (CIS); and the Immigration and Customs Enforcement (ICE). The adjudication functions described in paragraphs 1 - 7 above are now performed by the CIS.

9.    EMMA GUYTON, defendant herein, was a resident of Bryan, Texas, and will hereinafter be referred to as GUYTON.

2

10.  AMINATA SMITH, defendant herein, was a resident of Houston, Texas, and will hereinafter be referred to as SMITH.

## COUNT ONE
### (Conspiracy - 8 U.S.C. §1324(a)(1)(A)(v)(I))

**A.   INTRODUCTION**

1.  The Grand Jury adopts, realleges, and incorporates herein the allegations in paragraphs 1-10 of the Introduction of this Indictment as if set out fully herein.

**B.   THE CONSPIRACY AND ITS OBJECTS**

2.  From in or about April 2001, and continuing to in or about June 2002, in the Houston Division of the Southern District of Texas and elsewhere,

EMMA GUYTON
and
AMINATA SMITH aka ATA,

defendants herein, did knowingly and willfully conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.   To encourage and induce aliens, for the purpose of commercial advantage and private financial gain, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that the coming to, entry, and residence in the United States by the said aliens was in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv) and (a)(1)(B)(i).

3

b.   To enter into a marriage for the purpose of evading any provision of the immigration laws in violation of Title 8 United States Code, Section 1325(c).

C.   **THE MANNER AND MEANS OF THE CONSPIRACY**

The manner and means of the conspiracy were as follows:

3.   Defendants would and did work together for profit as recruiters and arrangers for fraudulent marriages between foreign nationals and United States citizens.

4.   Defendants would and did refer the foreign nationals to attorneys so that the foreign nationals could apply for and obtain immigration benefits they were not otherwise entitled to receive.

5.   Defendants would and did collect between $1,500.00 and $5,000.00 from each foreign national to arrange the marriage and obtain immigration benefits.

6.   Defendants would and did pay United States citizens between $150.00 and $500.00 for each marriage with a foreign national.

D.   **OVERT ACTS**

7.   In furtherance of the conspiracy, one or more of the co-conspirators committed in the Houston Division of the Southern District of Texas and elsewhere, one or more of the following overt acts:

4

**a. Salif Diop and Salif Toure**

(1)   On or about April 16, 2001, SMITH met with Salif Diop and Salif Toure, both aliens from Mali, at her residence in Houston.  SMITH arranged for Salif Diop and Salif Toure to enter into a fraudulent marriage with United States citizens for the purpose of obtaining lawful immigration status.

(2)   On or about April 16, 2001, SMITH introduced Salif Diop to United States citizen Paula Marie Murphy.

(3)   On or about April 16, 2001, SMITH introduced Salif Toure to United States citizen Hazara Vaughns.

(4)   On or about April 16, 2001, Salif Diop entered into a fraudulent marriage with Paula Marie Murphy.

(5)   On or about April 16, 2001, Salif Toure entered into a fraudulent marriage with Hazara Vaughns.

(6)   On or about April 17, 2001, SMITH directed Salif Diop and Salif Toure to meet with an attorney to fill out immigration forms.

(7)   On or about April 25, 2001, Salif Diop filed a Form I-130 and a Form I-485 with the INS.

(8)   On or about May 10, 2001, Salif Toure filed a Form I-130 and a Form I-485 with the INS.

(9)   In or about August 2001, SMITH contacted Salif Diop and Salif Toure to inform them that their employment authorization cards were ready to be picked up.

(10)   Salif Diop and Salif Toure thereafter traveled to Houston where they presented their receipts to the INS and received their employment authorization documents.

### b. Doreen Musesengwa

(11) On or about April 19, 2001, SMITH met with an alien from Zimbabwe, Doreen Musesengwa, in Houston, Texas and handed Doreen Musesengwa an envelope containing an undisclosed amount of United States currency. Smith instructed Doreen Musesengwa to deliver the envelope  to GUYTON at a hotel in Bryan, Texas.

(12) On or About April 20, 2001, GUYTON met Doreen Musesengwa in Bryan, Texas and accepted delivery of an envelope from her.

(13) On or About April 20, 2001, following GUYTON's introduction, Doreen Musesengwa entered into a fraudulent marriage with John Thomas Hedge Jr., in Bryan, Texas.

(14) On or about April 20, 2001, following the marriage ceremony, SMITH met Doreen Musesengwa in Houston, Texas, where SMITH instructed Doreen Musesengwa to meet with a lawyer the next day for the purpose of filling out immigration documents.

(15) On or about April 21, 2001, in Houston, Texas, SMITH provided Doreen Musesengwa with the telephone number of an attorney and instructed Doreen Musesengwa to contact the attorney.

(16)   On or about April 21, 2001, Musesengwa met with
SMITH in Houston, Texas and was told to take pictures of herself
and her United States citizen spouse, get to know him and "get
the story straight" so Doreen Musesengwa could obtain
immigration benefits.

### c. Demba Sidibe

(17) In or about November 2001, SMITH had a
telephone conversation with Demba Sidibe, an alien from Mali
residing in Atlanta, Georgia, about entering into a fraudulent
marriage with a United States citizen in order to obtain resident
alien status.

(18) On or about November 14, 2001, SMITH met with
Demba Sidibe in Houston, Texas and accepted delivery of $3,000
in United States currency as payment for a fraudulent marriage.

(19) On or about November 15, 2001, SMITH caused
another person to drive Demba Sidibe to GUYTON's residence in
Bryan, Texas, where GUYTON introduced Sidibe to a United States
citizen, Vickie Bisch, for the purpose of entering into a
fraudulent marriage.

(20) On or about November 15, 2001, Demba Sidibe
married Vickie Bisch at Bryan, Texas.

(21) On or about November 15, 2001, following the
marriage ceremony, SMITH caused another person to drive Demba
Sidibe to an attorney's office where Sidibe filled out
immigration forms for the purpose of obtaining immigration
benefits.

7

(22) On or about November 15, 2001, Demba Sidibe left the attorney's office and returned to SMITH's residence. Sidibe complained to SMITH that it would be impossible to show that Sidibe and Vickie Bisch were living together because Sidibe lived in Atlanta and Vickie Bisch lived in Bryan, Texas. SMITH told Sidibe not to worry because SMITH would take care of everything.

(23) On or about March 12, 2002, Vickie Bisch and Demba Sidibe filed an Immigration Form I-130 with the INS.

(24) On or about June 5, 2002, Demba Sidibe was issued an employment authorization document by the INS.

In violation of Title 8, United States Code, §1324(a)(1)(A)(v)(I).

### COUNTS 2 THROUGH 5
#### (Encouraging and Inducing Unlawful Immigration - 8 U.S.C. §1324(a)(1)(A)(iv))

On or about the dates listed below, in the Houston Division of the Southern District of Texas,

EMMA GUYTON<br>
and<br>
AMINATA SMITH aka ATA,

defendants herein, while aiding and abetting others both known and unknown to the grand jury, for the purpose of commercial advantage and private financial gain, did knowingly encourage and induce, and attempt to encourage and induce, the below listed individuals, each then believed to be an alien, to enter and reside in the United States, in reckless disregard of the fact that such entry into, and residence in, the United States was in violation of law:

8

| COUNT | DATE | Alien |
|-------|------|-------|
| 2 | 4/16/01 | SALIF TOURE |
| 3 | 4/16/01 | SALIF DIOP |
| 4 | 4/19/01 | DOREEN MUSESENGWA |
| 5 | 11/15/01 | DEMBA SIDIBE |

In violation of Title 8, United States Code, §1324 (a)(1)(A)(iv) and (a)(1)(B)(i); and Title 18, United States code, §2.

## COUNTS 6 THROUGH 9
### (Marriage Fraud -8 U.S.C. §1325(c))

On or about the dates listed below, in the Houston Division of the Southern District of Texas,

EMMA GUYTON
and
AMINATA SMITH aka ATA,

defendants herein, while aiding and abetting others both known and unknown to the grand jury, did knowingly cause United States citizens to enter into a marriage with the below listed aliens, for the purpose of evading a provision of the immigration laws.

| COUNT | DATE | Alien |
|-------|------|-------|
| 6 | 4/16/01 | SALIF TOURE |
| 7 | 4/16/01 | SALIF DIOP |
| 8 | 4/19/01 | DOREEN MUSESENGWA |
| 9 | 11/15/01 | DEMBA SIDIBE |

   In violation of Title 8, United States Code, §1325(c); and
Title 18, United States Code, §2.

                              A TRUE BILL



                              _____
                              FOREPERSON OF THE GRAND JURY

     MICHAEL T. SHELBY
     United States Attorney
     Southern District to Texas

By:  _____
     Edward F. Gallagher
     Assistant U.S. Attorney

     _____
     Howard Rose
     Special Assistant U.S. Attorney

10